Our next case for argument this morning is Orlowski v. Milwaukee County. Mr. Safran. Your Honor's counsel, may it please the court, my name is Jonathan Safran. I represent the plaintiff's appellants Gary Orlowski and the estate of his son Alexander Orlowski. This case is before you from an appeal the district court's order granting defendants at police motion for summary judgment. This case was originally brought pursuant to 42 USC section 1983 against Milwaukee County and individual defendants employed by the county due to the in-custody death of Alex Orlowski from a fatal methadone overdose which occurred on November 22nd 2007. This appeal focuses on both Alex Orlowski's estate's Eighth Amendment claim for the failure to provide medical attention and Gary Orlowski's claim the loss of familiar relationship, society, and companionship of his son Alex. As to the Eighth Amendment failure to provide medical attention claim, construing the facts in the light most favorable to the plaintiff's appellants, we believe the facts show that Alex Orlowski had an objectively serious medical condition, a methadone overdose, and the district court agreed with the facts supported in that determination. This was shown by the factual allegations that Alex Orlowski died due to the failure of the defendants to provide appropriate and timely medical care and that both the plaintiff and defendant medical experts agree that if he would have been given appropriate medical care during the two and a half hours or so prior to him being found unresponsive, that Alex would have lived and likely had a complete and uncomplicated recovery from that methadone overdose. It is also our contention that both the direct evidence and circumstantial evidence prove that the defendants knew of but disregarded a substantial risk of harm to Alex by not providing him with necessary medical attention and care and it is our contention that a fact finder could conclude that the risk of harm was obvious. The risk of harm in this case was not getting Alex the medical care which was shown to have been necessary to prevent his death. For a constitutional right to be clearly established, as the court is aware, no controlling case with matching facts is necessary. On the other hand, appearing to be not breathing at times and being unable to be awakened are obvious signs of a substantial risk of harm, let alone a drug overdose in this case. At the very least, the district court erred in granting summary judgment to the defendants, substantiated by what the court did and also wrote in its decision when it stated, quote, the facts here more strongly weigh in favor of granting summary judgment in favor of the defendants, end quote. We contend that the district court did not construe the facts in the light most favorable to the non-moving party, the plaintiff's appellants, but it instead improperly weighed the evidence, it failed to consider some evidence, and it made inferences drawn from certain facts which it weighed in favor of the defendants' appellees, but also disregarded that there were issues of material fact which should have precluded granting summary judgment for the defendants. So if this case goes to trial, do you intend to get testimony from the prisoners whose hearsay statements appear in the police report? Yes, Your Honor. Why didn't you have these prisoners supply affidavits or depose them before summary judgment? We knew what those inmates were going to say. Obviously, if the case had proceeded trial and if we certainly go to trial, they will provide significant additional testimony, but we felt in response to what we anticipated were going to be motions in this case that we needed to address the facts that we felt would preclude summary judgment. We think, again, the information was provided by those inmates indeed supports that. District court incorrectly concluded after the evidence was provided that the defendants were aware of and did not disregard a substantial risk of harm to Alex's health. Now, as far as the direct evidence of actual knowledge of the substantial risk of harm, we believe it can be shown if the circumstances suggest, as the court is aware of, the circumstances suggest the official had been exposed to information concerning the risk and thus must have known about it. The plaintiff's appellants contend in this case that the defendants had actual knowledge of but disregarded the substantial risk of Correctional Officer Alexander's contemporaneous admissions in the log book that Alex quote was not breathing at times, end quote, and that quote he had a severe sleeping disorder, end quote. C. O. Alexander's testimony that it seemed to him like Alex had at times stopped breathing. C. O. Alexander's admission that he could not wake up Alex after several attempts, and he did not know the reason why he did not wake up. Inmates twice having twice having told C. O. Alexander that something was wrong with Alex when he would not wake up for both his kitchen duty as well as for breakfast, and no contemporaneous or before death evidence that Alex was snoring at all or had any sleep apnea symptoms. This is important in why the county's 30 B six designee indicated in her testimony that a policy existed that if things are not recorded, it was the county's position they did not happen for this exact reason that we that indeed something else was going on that was not reflected contemporaneously in the log book. As the proof of circumstantial evidence of knowledge of the substantial risk of harm, it was shown by the following. C. O. Alexander made no notes about snoring in the log book, and his claims that Alex had been snoring were only again after the fact. C. O. Alexander's attempts to wake up Alex were indeed due to his concerns about his health and his acknowledged inability to wake him up supports the knowledge that Alexander knew of the substantial risk of harm. Well, now, Alexander and man's neither of them had interacted with Alex before the shift and didn't know he had taken drugs. That is correct. The concern is again that the Milwaukee County certainly had a policy that correctional officer, correctional officers were to monitor inmates. They were indeed to watch for any drug use. And indeed, that is what happened here. And again, the fact that C. O. Alexander makes the notes and goes to the point of calling his supervisor reflects the fact that he obviously felt there is something significantly going on, but unfortunately no one did anything further. In regard to C. O. Mann's, again the supervisor, he claims that he was not told about Alex's stoppage of breathing and that is not supported by other information that he claims Alexander did tell him, also reflected in the log book. As well as C. O. Mann's testimony that if he had been told that Alex had stopped breathing, he would have called for a medical emergency, while Alexander testified that he had told him that information himself. So again, there is at least a material dispute of fact which exists. As far as proof of knowledge of the substantial risk of harm that was obvious, that was never considered by the district court and no analysis was provided. However, it can be shown, we believe, by the fact again that the log book entries reflect Alex's lack of breathing at times, C. O. Alexander's inability to wake up Alex, again with no known cause, and the statements by that they informed C. O. Alexander that indeed something was wrong with Alex. They indeed had had the experience of dealing with him for some period of time and they were concerned enough to indeed inform the correctional officer and one even got to the point, because of his interactions and continuously telling the correctional officer there was a problem, he actually was put in the hole. As indicated also, the district court appears to have disregarded that there were a number of issues of material fact, which precluded its granting summary judgment for the defendants in this analysis. And again, some of those are the dispute between defendants Alexander and Manns about Alex's alleged snoring. Where Manns testified he was told that Alex's snoring was bothering other inmates. However, Alexander, again the correctional officer on duty, testified that no other inmates were complaining of Alex's snoring. There was indeed the dispute between Alexander's testimony that inmates told him that Alex had breathed that way all the time, as opposed to the inmate's statement that Alex sleeps that way all the time. And the district court used that when it weighed Alexander's testimony by relying on Supervisor Ertmann when she came into the dorm. Those observations by her were at 435 in the morning when she toured the dorm, although the evidence would show that the statements that were made by the inmates were much earlier. That was at four o'clock in the morning when they were going to their kitchen duty assignment. And then also there's a dispute that Alexander noted in the log book that Alex was not breathing at times, but Manns' testimony said that he was never told that information, and that had he been told that information, he would have called for a medical emergency. We believe there's also errors by the district court in that the court disregarded certain things, such as inmates said that the defendant Alexander knocked on Alex's bunk approximately 20 times with his flashlight, but the district court only that Alexander said that he shook Alex's bed and called his name. There was a failure to note the disputed issue of material fact between Alexander's claims that Alex did not have to get up for kitchen duty, as opposed to the county's own policy that inmates had work assignments they were required to appear at, which were mandatory, as well as failing to note the disputed issue of fact between Alexander's claims that attending breakfast for Alex and other inmates was not required, however the county's own policy was that attendance at breakfast was mandatory for inmates all the time. In its citation to the Milwaukee County Rule 30b-6 designee's testimony for the proposition that Alex had discretion whether to call for a medical emergency, there was the designee that we believe actually testified that if a correctional officer could not wake up an inmate without knowing the reason why, then that would be a medical emergency, but indeed the district court did not refer to those at least a material dispute. Is there any evidence in the record that C.O. Alexander actually drew the inference from the facts before him that Orlowski was suffering an extremely serious and potentially fatal medical condition? I think one thing, your honor, is the fact that he actually called the supervisor. He indicates that snoring is a common phenomenon in prisons. The specifically wrote in the logbook, which is unusual too, about an inmate who was just snoring. It shows that he felt because he noted that indeed that he was not breathing at times and that he had that sleep disorder, I believe it shows at least by way of circumstantial evidence, if not by direct evidence, that he was concerned enough and felt that there was some type of medical condition going on, that he felt that he should at least contact a supervisor. Now nothing was done after that and again... Nothing or did he periodically, did Alexander periodically check on Orlowski? Well he indicates that he, in his security checks, went back and there was really nothing different. So by implication he indicated, and he was asked and he provided his testimony, that it wasn't seeming to be any better, didn't seem to be any different, and so there was this ongoing concern that it would appear that he had noted at least at four o'clock in the morning that didn't seem to dissipate, which we think was obvious enough to show that the correctional officer should have felt that there was something more to do and indeed that Alex was suffering from significant substantial medical concern indeed and that was the risk that it seems as though he realized but didn't seem to do anything more about it and again if he had done something more, if he had called for that medical emergency, if he had indicated that something more needed to be done, if he called a supervisor again, maybe that indeed would have left something different to occur but that shows again the total disregard of that significant medical need in this If we're in a should-have situation, then Alexander wins. If we're in a Alexander knew and did nothing about it, then Orlowski wins. Why? I think this is really close and I'm wondering, you have a situation where it's not entirely clear that Alexander knew that Orlowski was in a situation where he was about to expire and Alexander was concerned enough that he would check periodically. Doesn't that indicate to you that Alexander knew that there was a potential issue but did not appreciate its seriousness and he should have appreciated its seriousness but he didn't? Well I think you will hear that from counsel on behalf of the county as they try to construe the facts in indeed that way or maybe even stronger. I think that shows if nothing else that there is a material issue of fact in this case. I believe that the evidence supports the fact that Alexander knew that there was a concern, knew that there was a problem, knew that he had a serious medical need and did nothing about it. At the very least if he did something it was only calling his supervisor. The fact that he went back and those security checks, those are required but he didn't do anything further even though it shows that as he indicated in his testimony that there was really no change in his condition and that indeed Alex Orlowski was still exhibiting the same types of issues that he was having before as far as the often periods of not breathing at all and the severe sleep disorder. I see my time is open for my rebuttal so I will leave the court. Mm-hmm. Certainly counsel. Mr. Boal. May it please the court. Good morning Your Honors. I represent Pelley's Alexander and Mann, Mann's, both of whom are correctional officers in the Milwaukee County House of Corrections. Officers Alexander and Mann's are entitled to qualified immunity given the holdings of three Supreme Court cases returned during the 2015 term. The Mullinex case, Taylor case, and the Sheehan case. Under the holdings of those three cases the plaintiffs have the burden of showing that every reasonable officer in Pelley's precise shoes would have known beyond debate that they were violating the plaintiff appellant's rights. So is it your position that it is not clearly established that an inmate has a right to receive medical care for an objectively serious condition such as not breathing? Your Honor, given the holding of the recent three Supreme Court cases, the district court in this court must put themselves in the precise shoes of the officers and look at the facts at a granular level of detail. Right, so that's what I'm trying to do, look at the granular level. When when Purtle tries to wake him up he finds him gagging and choking. He tells the CO something was wrong and Green also talks to repeatedly says something is wrong and Alexander tries to wake him up, shakes his body, calls his name. He doesn't wake up. He shines his flashlight in his face. He knocks on the bunk 20 times. I mean, so I mean they not breathing well could be a serious medical condition. I mean I'm just trying to get to why qualified immunity would not apply. Well, Your Honor, there are a number of responses to your question. First of all, some of the facts you recited appear only in statements and aren't sworn statements. You're referring to the police report. That's correct. Versus the affidavit. That's correct. So that would be one of your positions that the affidavit should have been submitted rather than reliance on the police report. That would be only one of my positions. My first position is it is not clear beyond debate that officers in this situation would have known that they were violating a clearly established constitutional right. You referred to Mr. Alexander's testimony. He testified that he couldn't wake Mr. Orlowski up but that when he shook him he rolled over and stopped snoring. Your Honor, there are some facts that need to be emphasized when we look at the question of whether a clearly established constitutional right was being violated and these very same facts go to the merits of whether a reasonable jury could find that these officers were recklessly indifferent to a clear medical need. First of all, these two officers, it is undisputed, had no experience with this particular prisoner. They came on to their shift in the early morning hours. The prisoners were all asleep in their dorms. These officers didn't know anything about Mr. Orlowski's history. Number two, Mr. Orlowski was never previously diagnosed with a clear medical need for anything. He wasn't diagnosed with anything. I think it is worth noting that while drug overdoses in jails and prisons aren't entirely unheard of, they are uncommon and irregular events. On the other hand, prisoners snoring loudly and bothering other prisoners is a very common event. I believe there is compelling evidence that Mr. Alexander... Well, in the log he says he appears to have a severe sleeping disorder. He appears not to be able to breathe and or when he is breathing, the inmate appears to have a lot of difficulty sleeping. So, in your view, that's not enough? That's not enough, Your Honor, in the context of this case. After writing those words, Alexander called his supervisor, Manz, and discussed the situation. And they came up with a perfectly sensible plan. Manz told Alexander, when Alexander wakes up at an hour, to ask him if he is aware that he is snoring and if he is aware of the way he is sleeping. That's a perfectly reasonable conclusion and a perfectly reasonable plan. And I would note that it is also significant that later in the shift, the highest-ranking officer in the institution, Officer Erdman, was walking through the dorm, saw this entry in the log, and Erdman and Alexander then went to the bunk and observed Orlowski, and they both testified that at that point in time he was breathing normally. All three of these officers looked at the deny these officers qualified immunity, this court has to hold that there was a clearly established constitutional right that would have been known to every officer when a prisoner is snoring with no past history of a diagnosed medical condition that the Constitution requires the officers to call for a But we didn't have just snoring here. We had a situation where the officer vigorously tried to wake up an inmate and the inmate didn't wake up and the officer didn't know why. And the inmate just kept sleeping. Well I would take issue with that characterization. The hit the bunk with the flashlight comes from an unsworn statement in a police report. Alexander testified, and I believe this is undisputed, that he shook Mr. Orlowski, tried to wake him up, he rolled over and stopped snoring. The log entry that your Honor refers to is perfectly consistent with an officer observing a prisoner who is snoring very loudly. The officer is concerned, he logs it appropriately, and the sergeant reviews the situation and the highest-ranking officer reviews the situation and they all come to the same conclusion. That they're dealing with a prisoner who has a sleep disorder and they're going to address it by discussing it with the prisoner when he wakes up. Well let's say you're right that the only admissible evidence is that the correctional officer shook Orlowski, tried to wake him up, couldn't wake him up, and didn't know why. This is a prison. Inmates have to do what correctional officers tell them to do. So Mr. Orlowski would be incented to follow those rules and would know that if he didn't follow those rules and do what the CO told him to do, he could be punished. It isn't like a parent who tries to wake up a teenager and the teenager sadly ignores the parent and then suffers no consequences. So doesn't the fact that Alexander couldn't wake up Orlowski and Alexander didn't know why, isn't that enough for the light bulb to have gone off and Alexander to realize we have something more serious here than a snorer? Absolutely not, Your Honor. Sound sleeping is not unusual at all and as a matter of fact that premise is contained in your question. But it was more it says and also to be not breathing at times. Yes and the deposition testimony was he would stop breathing followed by a gasp and he would start to breathe again. That's irregular breathing. That is not evidence that someone has a serious medical condition that requires a medical emergency and that's the conclusion that was made by three officers. And so this business of knocking on the metal bunk 20 times and get no response was not a red flag. Your Honor, we're not sure that even happened. Uh, if it did happen, I would submit that that is simply evidence of a very sound sleeper or perhaps someone who does not like the teenage, uh, child in the court's suggestion doesn't want to be woken up. Well, I was making a distinction between the teenager who doesn't want to be woken up, who doesn't suffer any consequences and somebody who's in a correctional, uh, facility who has to who really does have to follow the instructions of the people who are are watching over him. Well, Your Honor, what was Officer Alexander to do? Uh, this is an appropriate time for a prisoner to be sleeping. The prisoners entitled. It wasn't an appropriate time for the prisoner to be sleeping because the prisoner was supposed to wake up and go to breakfast duty and then wake up and go to breakfast. Well, the log entry you're referring to is at four a.m. I don't believe that was the time to go to breakfast. It was time to go to breakfast duty. And so in this situation, and this wasn't Orlowski's first breakfast duty, Orlowski knows that he has to go to breakfast duty. Uh, he's not waking up. He's being insubordinate to the officer, and the officer can't wake him up. So the officer could think, You know what? This something's wrong here. I can't wake this person up. I don't know why. Um, I'm gonna tell my superior about it. It's serious enough that I'm gonna tell my superior about it, and then I'm just not gonna do anything. Well, Your Honor, that's exactly what Alexander did. He logged it, and he called his superior, and they talked about a reasonable response. And fortuitously, the ultimate supervisor, Ertman, came through the dorm and assessed the same facts. They all drew the reasonable conclusion that this was a very sound sleeper or perhaps an insubordinate prisoner who didn't want to be woken up. That is a reasonable conclusion. But Your Honor, I believe the discussion we're having now we're talking about the merits, the merits being whether reasonable jury could find that there was knowing disregard of a serious medical need before this court can get to that question. I believe you have to address the question that the district court did not address, and that is whether these officers, under recent Supreme Court precedent, are entitled to qualified immunity. And I would submit again, and this is the principal argument I'm making on this appeal, that you do agree, though, that it is clearly established that an inmate has a right to receive medical care for an objectively serious condition, and that when an officer is deliberately indifferent to that condition, the rights are violated. You do agree that's the general principle? Your Honor, I agree that that's the general principle, but in order to address the qualified immunity question, which has to come first, the court is supposed to address qualified immunity first. Yeah, failure to provide medical care when it's a serious, objectively serious condition. So the only question is whether or not breathing under these circumstances and an objectively serious condition. Well, no, Your Honor. The question would be whether that is a clear violation of a constitutional right that would be known to every reasonable officer. Those are the words of the Supreme Court beyond debate, and I submit that it cannot be said beyond debate that every reasonable officer would know in this factual context that they were violating a constitutional right. We have three officers here who all assess the facts, and none of them thought that they were violating a clearly established constitutional right. Now, if the court has no questions, that would conclude my remarks. Can I ask the court to affirm the district court? Thank you. Anything further, Mr. Saffron? And why don't you address his attack on the fact that this other evidence from the inmates is contained in the police report, it's hearsay, and there's no affidavit, and how we should treat that in the context of summary judgment? I will say, Your Honor, that that may very well be considered a hearsay. It may be considered... It is hearsay. It may be considered as hearsay, but it may also... Well, it is hearsay if it's in the police report and they're not called, and so the affidavit wasn't provided. Normally, we get affidavits. Why weren't they provided? Some inmates could not be found, which is part of the problem. However, the court certainly referred to that testimony in that report. And again, this may be also qualified as a business record. There may be other ways around the hearsay objection regarding that, but I do appreciate that being a concern that the court has raised. Well, if there's not a way around it, because certainly it's not present since impression given... Well, I guess that could be debated, but if there's no way around it and those statements don't come in, then that's a problem, isn't it? Well, that may be a problem. Again, there is testimony by way of the other affidavit that we have with the inmate, which is also very supportive. And again, that is the inmate, I believe, that talks about that he actually ended up having to go into the hole because he continuously told CO Alexander that there was a problem, that Alex had a physical problem that he needed to address. So there is that evidence by way of the other affidavit that we do have from the other inmate. If I can just address a few issues as far as counsel. Again, as this court is well aware to determine if qualified immunity is to be provided, there are two tasks that need to be decided. First, whether a constitutional right was violated, taken with facts... And then let me just go back. That police report was taken sometime after the incident in question. It was either... I don't remember if it was the same day or the next day. Right. No, because I'm looking at the theory of admissibility was present since impression or excited utterances, and usually that doesn't qualify. It may very well be a business record. It was an official investigation done by law enforcement officers of the county. This was the Sheriff's Department that did that. Right, but business records that contain here say you have to have an exception or something within the business record. So the business record gets you to base one, perhaps, but not base two. It may, and there may be others, and I'm not sure I can address that as far as the court right now. Thank you, Mr. Counsel. Thank you. The case will be taken under advisement.